**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PATRICIA A. RYAN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:04cv1621 |
| ) | **Electronic Filing** |
| **THE PRUDENTIAL INSURANCE** ) | |
| **COMPANY OF AMERICA, MEDCO** ) | |
| **HEALTH SOLUTIONS, INC.**, and ) | |
| **MERCK-MEDCO MANAGED** ) | |
| **CARE, L.L.C.,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

September 12, 2006

## I. INTRODUCTION

Plaintiff, Patricia A. Ryan ("Plaintiff" or "Ryan") filed a two (2) count complaint against Defendants, the Prudential Insurance Company of America ("Prudential"), Medco Health Solutions, Inc. ("Medco"), and Merck-Medco Managed Care, L.L.C. ("Merck-Medco")(collectively "Defendants"), alleging that Defendants unlawfully: (1) denied her claim for short-term disability ("STD") benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B); and (2) retaliated against her because she filed claims for STD benefits and/or terminated her employment with the purpose of interfering with her long-term disability ("LTD") benefits. Defendants have filed motions for summary judgment[1], Plaintiff has responded and the motions are now before the Court.

## II. STATEMENT OF THE CASE

Ryan began her employment with Medco in August of 1989 in Medco's customer service department. Medco's Concise Statement of Undisputed Material Facts ("Medco's

---

[1] Prudential joined in the motion and brief filed by Medco and Merck-Medco, and also filed a separate brief in support of summary judgment.

SMF") ¶¶ 1 & 2.  From 1994 until June of 2002, Ryan worked in Order Entry which required her to enter certain data into the computer.  Medco's SMF ¶¶ 4 & 5.  Because of certain medical conditions, Ryan began a leave of absence on June 11, 2002.  Medco's SMF ¶ 6.  On June 23, 2002, she applied for STD benefits under Medco's Medchoice Short-Term Disability Plan ("Medco's STD Plan").  Medco's SMF ¶ 7.

Ryan's application for STD benefits was submitted to Prudential, the third-party claims administrator appointed pursuant to Section 14 of Medco's STD Plan.  Medco's SMF ¶¶ 15 & 16.  In Ryan's application for benefits, Martin Duclos, M.D., her primary care physician, diagnosed Ryan with celiac sprue and irritable bowel syndrom.  Medco's SMF ¶ 17.  Dr. Duclos stated that these conditions resulted in a medical restriction limiting Ryan to no more than one (1) hour of activity without taking a break.  *Id.*  According to Dr. Duclos, Ryan's prognosis for her return to work was "good," and the doctor expected her to return to work by August 23, 2002. Medco's SMF ¶ 18.

By letter dated July 2, 2002, Prudential disallowed Plaintiff's claim for STD benefits. Medco's SMF ¶ 22.  The letter sated, in pertinent part: " The medical information submitted does not support an impairment that would prevent you from performing the essential functions of your job."  *Id.*  Ryan appealed Prudential's decision disallowing her claim, and in support of her appeal submitted two (2) personal statements describing her medical conditions.  Medco's SMF ¶ 25.  Medco also informed Prudential that Ryan's job duties had changed and that she was now required to stand while working.  Medco's SMF ¶ 27.  By letter dated October 23, 2002, Prudential denied Plaintiff's appeal of the decision to deny her claim for STD benefits. Medco's SMF ¶ 30.  In that same letter, Prudential informed Ryan that she was ineligible for long-term disability ("LTD") benefits, and she was advised of her right to appeal Prudential's ineligibility determination.  Medco's SMF ¶ 31.  In November of 2002, Ryan appealed the denial of her June 2002 claim for STD benefits to Medco's Benefits Review Committee. Medco's SMF ¶ 33.  Medco rejected the final appeal.  Medco's SMF ¶ 36.  Also in November

of 2002, Ryan appealed Prudential's determination that she was ineligible for LTD benefits. Medco's SMF ¶ 35.

In March of 2003, Ryan returned to work on a part-time basis. Medco's SMF ¶ 37. Because of her medical conditions, however, Plaintiff began a second leave of absence on May 12, 2003. Medco's SMF ¶ 38. By letter dated May 27, 2003, Prudential upheld its determination that Ryan was ineligible for LTD benefits, and advised her of her right to file a second appeal within one-hundred eighty (180) days. The letter further advised Ryan that if the second appeal was denied, she would have a right to file suit under ERISA. Medco's SMF ¶ 39. Ryan did not file a second appeal of the determination that she was ineligible for LTD benefits. Medco's SMF ¶ 40.

In June of 2003, Ryan applied for STD benefits relating to her May 2003 leave of absence. Medco's SMF ¶ 41. Dr. Duclos stated in the application that Ryan was diagnosed with sleep apnea, fibromyalgia and irritable bowel syndrome. *Id.* By letter dated October 14, 2003, Prudential denied Ryan's second claim for STD benefits, contending that she was not eligible because she was not working at least twenty-five (25) hours per week at the time she commenced her leave of absence. Medco's SMF ¶ 42. Ryan did not appeal the decision, and in fact admitted that she was ineligible for benefits at that time. *Id.*

Because Ryan had exhausted her appeals of the denial of her claims for benefits, Mnedco considered her continuing absence from work to be unauthorized. Medco's SMF ¶ 43. Ryan's return to work date was postponed from July 8, 2003, to October 22, 2003. Medco's SMF ¶ 44; Ryan's Appendix Exhibit 1 at pp. 100 -110; Ryan's Appendix Exhibit 4. By letter dated July 6, 2004, more than eight (8) months after the denial of Ryan's second application for STD benefits, Medco terminated her employment. Medco's SMF ¶ 45.

Medco's STD Plan provides up to twenty-six (26) weeks  weeks of benefits to an employee participant who has been totally disabled for five (5) consecutive work days. Affidavit of Andrew Gregg ("Gregg Affidavit") Exhibit A at Section 6. The Plan defines "Total

Disability" as:

> [S]uch disability due to Injury, Sickness, or Maternity which wholly and continuously disables the Participant from performing the duties of his or her occupation.

*Id.* at Section 3. The amount of the benefit provided by Medco's STD Plan varies, depending on the participant's length of service, from 100% of regular salary for the full twenty-six (26) weeks, to 100% for the first week, 80% for the next three (3) weeks and 50% thereafter. *Id.* at Section 7. Payment of benefits to employees under Medco's STD Plan are made entirely from Medco's general assets. Gregg Affidavit ¶ 7, Exhibit A at Section 1. The STD Plan is neither funded nor insured, nor is it secured by any securities such as bonds. Gregg Affidavit ¶ 8. Moreover, the Summary Plan applicable to Medco's STD Plan specifically states: "[t]he [Summary] Plan is an employee welfare benefit plan (except for the Short Term Disability Program which is a payroll practice) administered by the Plan Administrator." *See* Gregg Affidavit, Exhibit B at p. 2. The Summary Plan further states that "the Short Term Disability Program described above is not an employee benefit Plan subject to the requirements of ERISA." *See* Gregg Affidavit, Exhibit B, Note at p. 28.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to

the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

In the instant case, Medco first argues that this Court lacks subject matter jurisdiction because Medco's STD Plan does not fall under ERISA coverage. The Third Circuit has explained that "in order for the federal courts to have jurisdiction, plaintiff's complaint must show that the case arises under federal law." *New Jersey State AFL-CIO v. New Jersey*, 747 F.2d 891, 892 (3d Cir. 1984). "A claim 'arises under' federal law only if '[a] right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (quoting *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)). Unlike other defenses, the existence of subject-matter jurisdiction is "non-waivable," and "courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003)

5

(citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).

Moreover, where the court is reviewing whether or not jurisdiction exists, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). Moreover, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d at 891.

**IV.   DISCUSSION**

    A.   <u>Subject Matter Jurisdiction Under ERISA</u>

Medco contends that its STD Plan is not an employee benefit plan as defined under ERISA, and therefore, Count I of Ryan's complaint fails as a matter of law. ERISA regulates "employee welfare benefit plans," defined by the statute as:

> any plan, fund or program which was heretofore established or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability . . . .

29 U.S.C. § 1002(1). The Secretary of Labor, however, has promulgated a regulation that excludes certain "payroll practices" from the application of ERISA. *See* 29 C. F. R. § 2510.3-1(b)(2). The regulation expressly provides that an "employee benefit welfare plan" shall not include:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons . . . .

29 C. F. R. § 2510.3-1(b)(2).

Applying Section 2510.3-1(b)(2) to Medco's STD Plan, the Court finds that the Plan clearly qualifies as a payroll practice exempted from ERISA regulation[2]. It is undisputed that payments made pursuant to the STD Plan are on "account of periods of time during which the employee is physically or mentally unable to perform his or her duties." In addition, Medco's STD Plan unequivocally states that the STD Plan "benefits shall be provided solely from the general assets of the Company." Moreover, Ryan is unable to demonstrate that benefits were not paid out of Medco's general assets. *See e.g. Havey v. Tenneco. Inc.*, 2000 U.S. Dist. LEXIS 1694, 2000 WL 198445 *8 (N.D. Ill 2000).

The final requirement for exemption under the regulation is whether payments under the STD Plan are "an employee's normal compensation." Plaintiff argues that because the STD Plan provides for payment of benefits that in some cases amount to less than an employee's normal compensation, the Plan does not fall within the payroll practices exemption to ERISA. Plaintiff's argument is unavailing. The Department of Labor has issued several opinion letters in which it has found plans which provide less than an employee's normal compensation to be payroll practices. *See, e.g.*, *Department of Labor PWBP Opinion Letter 93-27 A*, 1993 WL 421012 (Oct. 12, 1993); *Department of Labor PWBP Opinion Letter 93-20 A*, 1993 WL 323133 (July 16, 1993); *Department of Labor PWBP Opinion Letter 92-18 A*, 1992 WL 328699 (Sept. 30, 1992)[3]. The position of the Department, therefore, supports exemption for plans that provide benefits that amount to no more than the employee's regular wages.

Several courts have also found that payment of less than normal compensation from an employer's general assets can constitute an employer payroll practice exempt from ERISA. *See*

---

[2]   In *Burtoft v. The Prudential Insurance Company of America et al.*, Civil Action No. 04-488 (W.D. Pa. January 30, 2006), Magistrate Judge Hay authored a well reasoned Report and Recommendation finding that this same STD Plan of Medco was a "payroll practice" exempted from ERISA. United States District Judge Terrance F. McVerry adopted the Report and Recommendation as the Opinion of the Court.

[3]   These and other Opinion Letters of the Department of Labor are set forth more fully in *Burtoft, supra.*, and in Medco's Memorandum of Law in Support.

*Capriccioso v. Henry Ford Health Sys.*, No. 99-1369, 2000 U.S. App. LEXIS 17535 (6th Cir. July 17, 2000)(finding a short term disability plan under which the employer paid full salary benefits for the first six months of disability, and thirty percent of the disabled employees' salary for the next six months to be a "payroll practice" exempt from ERISA); *Langley v. DaimlerChrysler Corp.*, 407 F. Supp. 2d 897, 912 (N.D. Ohio 2005)(finding a disability plan that paid totally disabled employees their full pay for approximately nine months, and seventy percent of their pay for approximately three more months "meets the definition of a 'payroll practice' excluded by regulation from ERISA's coverage"); *Havey v. Tenneco. Inc.*, 2000 U.S. Dist. LEXIS 1694, 2000 WL 198445 (N.D. Ill 2000)(short term disability plan found to be a payroll practice because it was paid out solely from general operating assets even though benefits paid to employee were less than regular pay and program was administered by a third-party); *Williams v. Great Dane Trailer Tenn., Inc.*, 1995 U.S. Dist. LEXIS 22152, 4-5 (W.D. Tenn. 1995)(finding a short term disability plan that provided benefits in an amount less than plaintiff's normal compensation was a payroll practice exempt from ERISA requirements); *Martin Marietta Energy Sys., Inc. v. Industrial Comm'n of Ohio*, 843 F. Supp. 1206, 1211 (S.D. Ohio 1994) (finding disability benefits constituted a payroll practice even though they amounted to less than employee's regular wage).

The Court finds that the Medco's STD Plan is not part of an employee welfare benefit plan governed by ERISA, but is a "payroll practice" exempted from ERISA requirements. As a consequence of the exclusion of Medco's STD Plan from ERISA coverage, this Court lacks subject-matter jurisdiction to consider the Ryan's substantive claim regarding Medco's denial of her application for STD benefits. The Court of Appeals for the Third Circuit has held that a District Court has no subject-matter jurisdiction to adjudicate claims based on an employee welfare benefit plan that does not come within the scope of ERISA. *See Matinchek v. John Alden Life Ins. Co.*, 93 F.3d 96 (3d Cir. 1996).  Accordingly, this Court will dismiss those claims related to Medco's STD Plan for want of subject-matter jurisdiction.  Summary

judgment will be granted on Count I of Plaintiff's complaint.

    B.    Ryan's Retaliation Claim

In Count II of her complaint, Ryan contends that she was unlawfully terminated in retaliation for her June 2002 and June 2003 claims for STD benefits, and/or to interfere with her attainment of LTD benefits, in violation of ERISA, 29 U.S.C. § 1140. Because this Court has found that any of Ryan's claims related to Medco's STD Plan must be dismissed, the retaliation claim based upon her June 2002 and June 2003 claims for STD benefits fails. Count II, therefore, must stand upon her contention that she was terminated in order to interfere with her attainment of LTD benefits. As set forth below, the Court finds Ryan's claim regarding the LTD benefits to be without merit.

Section 510 of ERISA protects against interference with protected rights by providing, in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140. Section 510 was enacted "primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits." *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997). The Third Circuit has held that an employer violates § 510 when it acts with the specific intent to interfere with an employee's right to benefits. *DiFederico v. Rolm Co.*, 201 F.3d 200, 204-05 (3d Cir. 2000). To establish a *prima facie* case under § 510, therefore, "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any pension right to which the employee may become entitled." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.), *cert. denied*, 484 U.S. 979 (1987). Once a plaintiff makes a *prima facie* showing, the employer has the burden of articulating a legitimate non-discriminatory reason for his conduct. The burden, then, shifts back to the plaintiff to show

9

that the employer's rationale was pre-textual and that the cancellation of benefits was the "determinative influence" on the employer's actions. *DiFederico v. Rolm Co.*, 201 F.3d at 205.

Defendants argue that Ryan has failed to set forth any specific facts that establish the second element of her *prima facie* claim, that Medco terminated her employment with the specific purpose of preventing her from attaining LTD benefits under Medco's LTD benefits program. The Third Circuit has stated that the specific intent element was the "essential element" that must be proven under § 510. *See Gavalik v. Continental Can Co.*, 812 F.2d at 851.

Ryan alleges that Medco terminated her employment in July of 2004 in order to interfere with her attaining ERISA protected LTD benefits. Prior to beginning her leave of absence in May of 2003, Ryan was regularly scheduled to work only twenty (20) hours per week. Deposition of Patricia Ryan ("Ryan Depo") pp. 87-88. In order for an employee to be eligible for benefits under Medco's LTD insurance program, however, an employee must work a minimum of twenty-five (25) hours per week. Gregg Affidavit, Exhibit C, LTD Plan Document pp. 1, 9. At the time of her termination, Ryan was not eligible for benefits under Medco's LTD insurance program. Further, under the LTD program, an eligible employee must also satisfy a 180-day disability elimination period. Gregg Affidavit, Exhibit C, LTD Plan Document, p. 1. Therefore, not only was Ryan not eligible for LTD benefits at the time of her termination, once she was able to work twenty-five (25) hours per week, she had to endure an addition six month period before she could actually receive any LTD benefits. At the time of her termination, Ryan's eligibility to collect LTD benefits under Medco's Plan was not even on the radar screen. Accordingly, there are no facts in the record that would support a finding that Medco terminated Ryan with the specific purpose of preventing her from attaining LTD benefits. There are no material issues of fact here that support a finding of a *prima facie* case under § 510. Summary judgment on Count II of Ryan's complaint will be granted.

## V.     CONCLUSION

This Court finds that there are no material facts in dispute.  Ryan is unable to show that Medco's STD Plan is a part of an employee welfare benefit plan governed by ERISA, and she is unable to show a *prima facie* case under § 510 Section of ERISA.  Defendants' motions for summary judgment shall be granted.   An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     John E. Quinn, Esquire
Evans Portnoy Quinn & O'Connor
36th Floor, One Oxford Centre
Pittsburgh, PA 15219

Frederick B. Goldsmith, Esquire
Michael J. Hopper, Esquire
Blumling & Gusky, LLP
1200 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

John K. Bennett, Esquire
Ronak R. Chokshi, Esquire
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068

Jonathan Dryer, Esquire
Salvatore A. Clemente, Esquire
Wilson Elser Moskowitz Edelman
    & Dicker LLP
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106